THE PEOPLE *ex rel.* George Postel *et al.*

*v.*

JAMES A. ROSE.

*Opinion filed June 23, 1904.*

CORPORATIONS—*act of 1895, fixing fees for incorporating, applies to railroad corporations.* The acts of 1895 (Laws of 1895, p. 132,) and 1899, (Laws of 1899, p. 117,) fixing the fees for incorporation and for increasing capital stock, apply to railroad corporations as well as to those organized under license from the Secretary of State.

ORIGINAL petition for *mandamus.*

CHARLES W. THOMAS, for relators.

H. J. HAMLIN, Attorney General, (GEORGE B. GILLES-
PIE, of counsel,) for respondent.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an original petition for *mandamus,* filed in this
court on April 14, 1903, praying that James A. Rose, Sec-
retary of State, be commanded to file and record the ar-
ticles of incorporation of the Belleville and Mascoutah
Electric Railway Company and to accept as compensa-
tion therefor the sum of two dollars. It appears from
the petition that on the 18th day of December, 1902, the
relators signed articles of incorporation, the purpose
of which was the organization of said company under
the provisions of sections 1, 2, 3 and 4 of chapter 114 of
Hurd's Revised Statutes of 1901, with a capital stock of
$300,000. After these articles had been recorded in the
recorder's office of St. Clair county, within which county
the railroad company proposed operating, they were pre-
sented to the Secretary of State with a fee of two dol-
lars, for the purpose of having them recorded in his office
in accordance with section 2, *supra.* That officer, con-
tending that he was entitled to two dollars, and, in addi-
tion, fees as fixed by section 10*a* of chapter 53 of Hurd's
Revised Statutes of 1901, declined to file and record the
articles for the amount tendered, but offered to do so
upon the payment of $347, which is the amount to which
he is entitled if said section 10*a* applies to railroad cor-
porations organized under chapter 114, *supra.* To this
petition the respondent files a general demurrer.

Corporations for pecuniary profit (with certain ex-
ceptions, of which railroad corporations are one,) in this
State must be organized under sections 2, 3 and 4 of chap-
ter 32 of Hurd's Revised Statutes of 1901, which is the
act on corporations, and which, as originally enacted, be-
came effective July 1, 1872. Persons desiring to organize

under this act make a statement in writing to that effect to the Secretary of State, who thereupon issues to such persons a license, as commissioners, to open books for subscriptions to the capital stock of the proposed corporation. After the corporate stock has been subscribed a meeting of the stockholders is held and directors or managers are elected. Thereafter the commissioners make a sworn report showing their proceedings and file the same with the Secretary of State, who thereupon issues "a certificate of the complete organization of the corporation," which shall be recorded in the office of the recorder of deeds of the county where the principal office of the company is located. Upon the recording of the said copy in that office the corporation shall be deemed fully organized and may proceed to business.

The method of incorporating railroad companies in this State is quite different, and is fixed by the first four sections of chapter 114, *supra*, originally enacted in 1872. Persons, not less than five, may become an incorporated company for the purpose of constructing and operating a railroad, by adopting and signing articles of incorporation, which shall be recorded in the office of the recorder of deeds in each county through or into which it is purposed to build such railroad and in the office of the Secretary of State, and when such articles are so recorded the persons named as corporators therein shall thereupon become and be deemed a body corporate.

Prior to July 1, 1895, the fees of this officer, who is respondent here, for services rendered in regard to the incorporation of railroad companies, as well as other corporations for pecuniary profit, were fixed by section 10 of chapter 53 of Hurd's Revised Statutes of 1895, which is identical with section 10 of the present Fees and Salaries act.

July 1, 1895, three additional sections of the statute, material here, became effective, the first of which (section 10a) provided "that all companies and corporations

hereafter organized under the laws of the State of Illinois shall pay to the Secretary of State, before there shall issue a certificate of incorporation to the same, fees as follows," and then followed language fixing fees in proportion to the amount of the capital stock, a corporation having a capital stock of more than $5000 to pay $50, and in addition thereto one dollar for each $1000 of capital stock in excess of $5000 of capital stock. (Hurd's Stat. 1895, chap. 53, sec. 10a.) In 1899 section 10a was amended by striking therefrom the words "a certificate of incorporation to the same" and inserting in lieu thereof the words "a license to incorporate the same," and in some other respects not material to the question now before us. Section 10a was again amended in 1903, but that amendment did not become effective until May 14, 1903.

The latter portion of section 10a as it existed on April 14, 1903, provided, in substance, that all corporations desiring to increase their capital stock should pay as a fee, in addition to all other fees then required by law, the sum of one dollar for each $1000 of increase of such capital stock. It is apparent that the first clause of the section and that portion of the section in reference to the fees to be paid upon an increase of capital stock, applied, by their terms, to all corporations organized in the State of Illinois, save alone those expressly excepted from the operation of that section. ·

No reason has been suggested, nor does any occur to us, that could move the legislature to fix a higher fee to be paid by corporations organized for pecuniary profit, other than railroad companies, than is paid by such companies, but it is insisted that the use of the language "before there shall issue a license to incorporate the same," restricts the application of the section to such corporations as can be organized only in pursuance of a license issued by the Secretary of State, and that as railroad corporations do not require such a license they are not within the language of the section.

Upon consideration of the entire section, however, and in view of the evident purpose of the legislature to increase the fees payable by all corporations not within the excepted classes, we have reached the conclusion that the higher rate of fees provided by section 10*a* applied to railroad corporations, and that the words last above quoted, instead of being words limiting the section to such corporations as require a license for their organization, are words fixing the time when such fees should be paid by those seeking to organize under the general Incorporation law of the State, the only distinction as to railroad companies being, that the law did not fix the precise point in the proceedings to incorporate, at which the fees should be paid.

We have been confirmed in this view by the succeeding section of the same act, which is numbered 10*b*, and which reads as follows: "It shall be unlawful for any company to do business, assuming to be incorporated under the laws of this State until the fees provided for in section one (1) of this act shall have been paid to the Secretary of State." The expression there used, "any company," includes railroad corporations, and the section is without any such words as appeared in section 10*a* (which is section 1 of the act) and which relators claim excluded such last mentioned corporations. Section 10*b* forbids the exercise of corporate power by "any company" until the fees fixed by the preceding section shall have been paid, and as corporations of the class here said to be without the language of said section 10*a* are not expressly excepted by this last mentioned section from the operation thereof, it seems plain from the reading of section 10*b* that the legislature intended by the language of the earlier section to include such corporations.

The facts stated by the petition do not entitle the relators to a writ of *mandamus.*                    *Writ denied.*